UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 20 CR 280-2 |
| v. | Judge Andrea R. Wood |
| TAHKISHA HODGE | |

**GOVERNMENT'S SENTENCING MEMORANDUM
AND OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT**

The UNITED STATES OF AMERICA, by its attorney, JOHN R. LAUSCH, JR.,
United States Attorney for the Northern District of Illinois, hereby submits its
sentencing memorandum in this case. For the reasons set forth below, the
government asks the Court to impose a sentence within the applicable Guidelines
range of 8 to 14 months' imprisonment and a two-year term of supervised release.[1]

**I.     BACKGROUND**

As stated in the PSR and Government's Version of the Offense ("GVO"), on
June 2, 2020, during a period of civil unrest in the Chicago area following the murder
of George Floyd, defendant Tahkisha Hodge conspired with a group of individuals,
including co-defendant Paris Mickle, to attempt to steal money from the PNC Bank
automated teller machine located at 8700 South Cottage Grove, Chicago, Illinois (the
"PNC Bank ATM"), in violation of Title 18, United States Code, Section 2113(b), all

---

[1] As stated in Section II below, the government objects to the total offense level
computation set forth in the Presentence Investigation Report ("PSR") because it
includes a two-level dangerous weapon enhancement that the government believes
should not be applied in this case.

in violation of Title 18, United States Code, Section 371. R. 79. Beginning at approximately 1:50 a.m. and continuing for about the next 30 minutes, Hodge and her co-conspirators attacked the PNC Bank ATM with, among other things, a lug wrench and a blow torch, and also used a chain that they connected to different vehicles and attached to the PNC Bank ATM in repeated attempts to break open the machine. PSR ¶¶ 6-8; GVO at 1-2.

The attempted theft of the money inside the PNC Bank ATM was captured by the bank's surveillance cameras, and that surveillance footage shows that Hodge arrived at the PNC Bank ATM at approximately 2:13 a.m. and immediately began working with her co-conspirators to try to break into the machine, talking to an unknown co-conspirator near the ATM and giving him a black object that appeared to be a prybar.[2] *Id.* A few moments later, some of the co-conspirators attached a chain that was connected to the back of a black car to the front of the PNC Bank ATM. *Id.* Hodge then lifted the chain momentarily to check that it was connected to the car and then patted the back of the car with her hand in an apparent signal to the driver to start driving. *Id.* The car drove forward, but the chain was unable to break into the PNC Bank ATM. *Id.* Hodge then walked away from the area of the ATM. *Id.*

---

[2] As correctly noted in the PSR, the surveillance footage shows that Hodge was not the first person to attack the PNC Bank ATM, and in fact, the ATM's outer shell was already damaged when Hodge's co-conspirators approached the machine and began attacking it with various tools at approximately 1:50 a.m. PSR ¶¶ 6-10. Nevertheless, the surveillance footage shows increasing damage to the PNC Bank ATM as a result of Hodge's and her co-conspirators' attacks on the machine. *Id.*

A black sports utility vehicle arrived next to the PNC Bank ATM at approximately 2:21 a.m. *Id.* Hodge was driving the SUV. *Id.* As seen on the video footage, co-defendant Mickle communicated with Hodge to get the SUV in the proper position so that other co-conspirators could attach the chain that was connected to the PNC Bank ATM to the rear of the SUV. *Id.* Mickle then gestured with his hands for Hodge to drive forward, which she did, and the chain pulled on the ATM before detaching from the machine. *Id.*

Hodge and her co-conspirators attempted to break into the PNC Bank ATM without success until Chicago Police Department officers arrived on the scene at approximately 2:22 a.m. *Id.* Upon seeing the police, Hodge drove the SUV in reverse through the bank parking lot and down a street in an attempt to get away. *Id.* Chicago Police officers arrested Hodge moments later. *Id.* The police later searched the SUV and found a torch, a prybar, and a chain with a hook that was attached to the vehicle. *Id.*

At the time of the attempted theft on June 2, 2020, the PNC Bank ATM contained approximately $53,176 in U.S. currency, which was in the care, custody, control, management, and possession of PNC Bank, National Association, the deposits of which were then insured by the Federal Deposit Insurance Corporation. *Id.* ¶ 9; GVO at 2. Furthermore, PNC Bank later determined that the PNC Bank ATM was damaged beyond repair based in part on the actions of Hodge and her co-conspirators and consequently removed and replaced the machine with a different ATM at a cost of approximately $62,818. *Id.*

3

On June 5, 2020, Hodge was charged by complaint with conspiracy to commit bank theft.  R. 1.  On June 17, 2020, a grand jury returned an indictment against Hodge and her co-defendant, charging them with conspiracy to commit bank theft.  R. 19.  On July 14, 2021, Hodge pled guilty to that charge, and she is scheduled to be sentenced by this Court on December 3, 2021.  R. 73.

## II.    GUIDELINES CALCULATION

### A.    The Adjusted Offense Level Prior to Acceptance Should be 12, not 14.

The government disagrees with the adjusted offense level computation set forth in the PSR because it includes a two-level dangerous weapon enhancement under Guideline § 2B1.1(b)(16)(B).[3]  As an initial matter, the Probation Office correctly noted that the base offense level in this case is 6 pursuant to Guideline §§ 2X1.1(a) and 2B1.1.  PSR ¶ 18.  The Probation Office also correctly determined that the base offense level should be increased by 6 levels under Guideline § 2B1.1(b)(1)(D) to 12 because the actual loss associated with the replacement of the PNC Bank ATM ($62,818) was more than $40,000 but less than $95,000.  *Id.* ¶ 19.[4]

---

[3] Since the filing of the PSR and GVO, the United States Sentencing Commission has issued a new Guidelines Manual that went into effect on November 1, 2021.  The November 2021 Guidelines Manual did not alter any of the sentencing calculations applicable in this case.

[4] The Guidelines provide that, in calculating the offense level for economic offenses, a court should increase the offense level by the loss amount, which is "the greater of actual loss or intended loss."  Guideline § 2B1.1, Application Note 3.  Here, the actual loss was PNC Bank's expense to replace the damaged ATM, which was $62,818, and it is greater than the intended loss.  Nevertheless, even if the intended loss amount was used in this case, which was $53,176 (the amount of money in the ATM at the time of the attempted theft), the base offense level still would be increased by 6 levels

4

However, the Probation Office also included a two-level dangerous weapon enhancement under Guideline § 2B1.1(b)(16)(B) that this Court should not apply. *Id.* ¶ 20. The Court's assessment of the appropriateness of applying the dangerous weapon enhancement should begin with the text of the relevant Guidelines provisions and their application notes. *United States v. Cook*, 850 F.3d 328, 332 (7th Cir. 2017). Here, under Guideline § 2B1.1(b)(16)(B), the offense level can be increased by two levels if "the offense involved" the "possession of a dangerous weapon (including a firearm) in connection with the offense." In relevant part, the Guidelines define "dangerous weapon" as "an instrument capable of inflicting death or serious bodily injury." Guideline § 1B1.1, Application Note 1(F).

The plain meaning of the relevant Guidelines provisions supports the application of the two-level dangerous weapon enhancement because the lit blow torch that Hodge's co-conspirators, including co-defendant Mickle, used to attack the PNC Bank ATM is plainly an instrument capable of inflicting serious bodily injury. PSR ¶ 20; *United States v. Sturman*, No. 93 CR 167, 1994 WL 282260, at *7 (N.D. Ill. June 22, 1994) (finding that hammer used to vandalize store was a "dangerous weapon" under Guideline § 1B1.1). Hodge's offense therefore involved the possession of a "dangerous weapon" under Guideline § 2B1.1(b)(16)(B).

Yet, while the plain meaning of the relevant Guidelines provisions supports application of the two-level enhancement, the nature and circumstances of the offense

---

under Guideline § 2B1.1(b)(1)(D), because the intended loss was more than $40,000 but less than $95,000.

counsel against its application as to Hodge. As seen on the bank surveillance footage, Hodge did not hold much less use the lit blow torch during the attempted theft. Moreover, her co-conspirators' possession of the lit blow torch did not involve their use of that instrument around anyone other than themselves, and their use of the instrument was directed towards the PNC Bank ATM, not any person. Additionally, when law enforcement arrived on the scene, neither Hodge nor any of her co-conspirators attempted to use the lit blow torch or any other instrument to threaten or harm the officers. Given those circumstances, the government submits that the two-level dangerous weapon enhancement should not be applied in calculating Hodge's offense level, and the adjusted offense level prior to acceptance should be 12.

### B. Criminal History Category Calculation

The government agrees with the Probation Office's finding that Hodge has three criminal history points and falls in criminal history category II. PSR ¶¶ 32-46.

### C. Advisory Guidelines Range

With a two-level reduction for acceptance of responsibility (*id.* ¶ 28), the total offense level is 10, which with a criminal history category of II, results in an advisory range of 8 to 14 months' imprisonment.[5]

---

[5] In the event this Court decides to apply the two-level dangerous weapon enhancement to the adjusted offense level, the government agrees with the Probation Office's calculation that with a two-level reduction for acceptance of responsibility, the total offense level is 12, which with a criminal history category of II, results in an advisory range of 12 to 18 months' imprisonment. *Id.* ¶ 105.

## III.  APPLICATION OF THE SENTENCING FACTORS

Section 3553(a) requires this Court to impose a sentence that is "sufficient, but not greater than necessary," to comply with the purposes of sentencing.  18 U.S.C. § 3553(a).  Those purposes are the need for the sentence "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  *Id.* § 3553(a)(2)(A)-(D).

In order to determine the sentence to impose, the Court must consider the statutory factors listed in § 3553(a)(1)-(7).  One of those factors is the advisory range set by the Sentencing Guidelines, and another is the Commission's policy statements. *Id.* § 3553(a)(4), (a)(5).  Although the Sentencing Guidelines are advisory only, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."  *Gall v. United States,* 552 U.S. 38, 49 (2007).  For the reasons set forth below, consideration of the § 3553(a) factors shows that a sentence within the Guidelines range of 8 to 14 months' imprisonment, along with a two-year term of supervised release, and restitution in the amount of $62,818, is warranted and necessary.

### A.    Term of Imprisonment

Considering the factors set forth in 18 U.S.C. § 3553(a), the government recommends a sentence of incarceration within the applicable Guidelines range of 8 to 14 months' imprisonment.  Such a sentence is sufficient, but not greater than

necessary, to reflect the seriousness of Hodge's offense, promote respect for the law, provide just punishment, and afford adequate deterrence, for *three* primary reasons.

*First*, a sentence within the applicable Guidelines range would reflect the seriousness of the offense. Hodge conspired with others to steal money from an ATM in the middle of the night during a period of civil unrest following the murder of George Floyd. This brazen offense caused irreparable harm to the ATM and required PNC Bank to replace the machine at a cost of approximately $62,818. But the seriousness of Hodge's offense extends further. The attempted looting by Hodge and the others during the days following the death of George Floyd required the expenditure of a significant amount of public resources. Furthermore, the looting caused reputational harm to the City of Chicago; undercut the message of peaceful protestors; and shook many Chicago residents' fundamental sense of security and faith in society. Hodge's offense therefore is very serious.

*Second*, a sentence within the applicable Guidelines range is necessary to provide adequate deterrence. As to specific deterrence, Hodge's background demonstrates that she does not respect the law and there is considerable risk that she will break the law again in the future. As set forth in the PSR, Hodge is no stranger to the criminal justice system. She has prior convictions for reckless discharge of a firearm, aggravated unlawful use of a weapon, obstruction of a police officer, and child endangerment, and Hodge was on probation for the child-endangerment conviction at the time of the instant offense. PSR ¶¶ 32-46. While the firearm and obstruction convictions took place more than 10 years ago, Hodge's more

8

recent convictions for child endangerment and the instant offense reflect a continuing disregard for the law that has not been abated by age (Hodge is now 36 years old) or parenthood (Hodge has two children). The sentence imposed in this case should therefore aim to try to end any further criminal behavior by Hodge.

On the issue of general deterrence, while Hodge is being held accountable in this case, there are many others who engaged in similar activity who have escaped prosecution, including many of Hodge's co-conspirators. The sentence in this case should also aim to deter those individuals and others who believe they can loot with impunity.

*Third*, Hodge's background, which provides both aggravating and mitigating circumstances, supports a sentence within the applicable Guidelines range. Hodge was raised by her mother, who admittedly provided well for Hodge, and was not subjected to any abuse or neglect as a child. *Id.* ¶ 67. However, Hodge's mother died in 2001 when Hodge was approximately 17 years old, which may have contributed to some of her criminal activity. *Id.* ¶¶ 68-69. Hodge also was the victim of a domestically violent boyfriend from 2001 to 2007. *Id.* ¶ 73. Hodge was able to successfully end that relationship and is now the mother of two children; lives in a home that she co-owns with a different ex-boyfriend; and has been gainfully employed by the State of Illinois for over three years—all of which makes her decision to commit the instant offense so confusing and inexcusable. *Id.* ¶¶ 73-74, 95, 99.

### B.    Supervised Release

The Court may impose a term of supervised release of not more than three years in this case.  *Id.* ¶ 107.  The government agrees with the Probation Office that this Court should impose a two-year term of supervised release.  A district court must justify the conditions and the length of a term of supervised release by an adequate statement of reasons, reasonably related to the applicable § 3553(a) factors.  *See United States v. Kappes*, 782 F.3d 828, 845 (7th. Cir. 2015).  In this case, a two-year term with the conditions proposed by the Probation Office is appropriate because of the need to provide adequate deterrence and to protect the public from further crimes by Hodge, particularly given the above-described history and characteristics.

### C.    Restitution

Pursuant to 18 U.S.C. § 3663A, the Court also should order Hodge to pay $62,818 to PNC Bank, which represents the cost to PNC Bank to replace the damaged ATM, with Hodge being jointly and severally liable to the bank for that amount with co-defendant Mickle.

### D.    Fine

The government disagrees with the Probation Office's recommendation that Hodge be ordered to pay a fine in the amount of $5,500 pursuant to 18 U.S.C. § 3571(b) and Guideline § 5E1.2(c)(3).  PSR ¶¶ 111-12; Sentencing Recommendation at 1.  While it appears that Hodge currently has some ability to pay a fine, the financial burden that a fine is likely to place on Hodge and her dependents (particularly if this Court orders restitution in the amount of $62,818, as the

10

government recommends) greatly outweighs any utility the fine may serve in this case.

## IV.    CONCLUSION

For the foregoing reasons, a sentence within the applicable Guidelines range of 8 to 14 months' imprisonment, along with a two-year term of supervised release, restitution in the amount of $62,818, and a $100 special assessment, is fair, reasonable, and sufficient, but not greater than necessary, to comply with the purposes of sentencing.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By: /s/ *Prashant Kolluri*
PRASHANT KOLLURI
Assistant United States Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-5300